UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:14-cr-24-T-23SPF
 8:15-cv-996-T-23SPF

CHRISTOPHER DUSTIN KESELESKI
_____/

**O R D E R**

Keseleski's moves under 28 U.S.C. § 2255 (Doc. 1) to vacate his sentence and challenges the validity of his convictions for both possessing cocaine with the intent to distribute and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Keseleski serves a total of eighty-four months, consisting of consecutive terms of twenty-four months for the distribution charge and sixty months for the gun charge. Keseleski pleaded guilty with the benefit of a plea agreement. In the motion to vacate Keseleski alleges four grounds for relief, including claims of ineffective assistance of counsel. The United States correctly argues that the motion lacks merit.

**I. FACTS**

Kesleski admitted to the following facts as recited in the plea agreement (Doc. 3 at 19):

> On March 28, 2012, an undercover detective with the Pinellas County Sheriff's Office met with Christopher Dustin Keseleski in a parking lot in Pinellas County, in the Middle District of Florida. The detective had met with Keseleski previously, and

> they had reached an agreement for Keseleski to purchase
> one-half of a kilogram of cocaine from the detective for
> $13,000.00. Keseleski traveled to the meeting with a .40
> caliber Smith and Wesson handgun, and fourteen .40
> caliber Smith and Wesson rounds of ammunition.
>
> Keseleski exited his automobile and walked to meet the
> detective and examined the cocaine. Keseleski then returned
> to the car he had arrived in and quickly returned to the
> detective and purchased the cocaine for $13,000.00 cash in a
> hand-to-hand transaction. Keseleski was arrested when he took
> possession of the cocaine. He had left the .40 caliber handgun
> in the glove box of the automobile where it was found after his
> arrest.

Additionally, the pre-sentence report ("PSR") explains that, when he initially arrived at the parking lot to purchase the cocaine, Keseleski put the cash and the gun together inside the glove box before he exited his car. (Pre-Sentence Report at 5, ¶ 12) At sentencing, Keseleski orally accepted the facts in the PSR without objection. (Doc. 29 at 4) The failure to challenge the PSR waives the right to challenge each fact. *See United States v. Evans*, 649 F. App'x 823, 824 (11th Cir. 2016)[1] ("Evans failed to object to, and is deemed to have admitted, the facts in his presentence investigation report . . . ."); *United States v. Davis*, 587 F.3d 1300, 1303–04 (11th Cir. 2009) (The defendant "was deemed to have admitted, for sentencing purposes, the facts in the PSI he did not object to clearly and specifically at sentencing."); *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.).

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Keseleski asserts several claims of ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim, as *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Keseleski must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Keseleski must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Keseleski cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers'

> performances; we are interested in whether the adversarial
> process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Although the *Strickland* standard controls a claim that counsel was ineffective for recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994), the quantum of evidence needed to prove both deficient performance and prejudice is different. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

## III. GROUNDS FOR RELIEF

Keseleski alleges four grounds for relief. The first ground challenges the appeal waiver in the plea agreement. In the remaining grounds Keseleski asserts that trial counsel should have challenged the gun charge. Each ground is precluded by the guilty plea. The appeal waiver claim (Ground One) is addressed singularly and the gun charge claims (Grounds Two through Four) are addressed collectively.

### A. The Right to an Appeal

Affording the motion to vacate a generous interpretation, Keseleski asserts two separate but related claims in Ground One. Keseleski faults counsel both for permitting Keseleski to agree to a plea agreement that contains an appeal waiver and for not appealing. The latter is addressed first.

### 1. Waiver of the Right to Appeal:

The appeal waiver in the plea agreement, which is a standard provision for plea agreements in this district, provides as follows (Doc. 3 at 16–17, ¶6):

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines . . . .[2]

In his supporting memorandum Keseleski contends that he "did not even get a chance to appeal since counsel had him waive his Appellate Rights," a waiver that he claims "is in fact against his constitutional rights." (Doc. 2 at 2) Contrary to his

---

[2] The waiver contains three exceptions, none of which is relevant in this action.

- 6 -

assertion, a defendant can waive a constitutionally protected right to appeal. *See United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993) ("We hold, therefore, that in most circumstances a defendant's knowing and voluntary waiver of the right to appeal his sentence will be enforced by this circuit."), *cert. denied* 513 U.S. 1051 (1994). A defendant may also waive other constitutionally protected rights. *See United States v. Valencia*, 556 F. App'x 916, 918 (11th Cir. 2014) ("[W]e have held that an unconditional guilty plea waives non-jurisdictional defects such as the right to a speedy trial, the right to inspect grand jury minutes, and the right to challenge the composition of the grand and petit juries.") (citing *United States v. Pierre*, 120 F.3d 1153, 1155–56 (11th Cir. 1997), *United States v. Tallant*, 547 F.2d 1291, 1294 n.4, 1295 (5th Cir. 1977), and *Winters v. Cook*, 466 F.2d 1393, 1394–95 (5th Cir. 1972)).

To the extent that Keseleski claims that the plea agreement is invalid because the agreement waives his right to appeal, ground one lacks merit.

**2. Failure to Appeal:**

Keseleski recognizes (1) that, under *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000), an attorney renders ineffective assistance by not appealing if the client "specifically requests it," and (2) that *Flores-Ortega* requires counsel to consult with the client to determine whether the client wishes to appeal. (Doc. 2 at 2) Keseleski does not contend that he directed counsel to appeal, but he claims that he could not appeal because under the terms of the plea agreement he waived the right to appeal.

Affording his arguments a generous interpretation, Keseleski may be claiming that counsel was ineffective for not consulting him about appealing.

*Flores-Ortega*, 528 U.S. at 476–77, recognizes three categories of claims: (1) counsel fails to appeal even though the defendant unquestionably expresses his desire to appeal,[3] (2) the defendant faults counsel for not appealing even though the defendant directed counsel not to appeal,[4] and (3) the defendant's desire to appeal is not clearly expressed.[5] Keseleski appears to fall into the third category. *Flores-Ortega*, 528 U.S. at 478, suggests how to proceed:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning — advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . . If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient

---

[3] *Roe v. Flores-Ortega*, 528 U.S. at 477 ("[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.").

[4] *Roe v. Flores-Ortega*, 528 U.S. at 477. ("At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.").

[5] *Roe v. Flores-Ortega*, 528 U.S. at 477 ("Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?").

performance. That question lies at the heart of this case: Under
what circumstances does counsel have an obligation to consult
with the defendant about an appeal?

When he pleaded guilty Keseleski admitted to understanding that, under the terms in the plea agreement, he was waiving his right to appeal. (Audio recording of change of plea at 10:17:25–10:29:55). According to the provided affidavit (Doc. 5-1), Keseleski and trial counsel met "on multiple occasions regarding the plea agreement" and counsel "answered all questions." The affidavit does not address whether, after sentencing, counsel consulted Keseleski about appealing. As a consequence, this order assumes that no consultation occurred and the linchpin is whether "counsel ha[d] an obligation to consult with [Keseleski] about an appeal." (Id.)

Consulting a client about appealing is not constitutionally required in every case. "We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Roe v. Flores-Ortega*, 528 U.S. at 479 (italics original). *See also Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007) ("A criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal. In some cases, the Sixth Amendment requires such consultation; in others, it does not."). *Flores-Ortega*, 528 U.S. at 480, identifies two situations where counsel is constitutionally required to consult the client about appealing.

[C]ounsel has a constitutionally imposed duty to consult with
the defendant about an appeal when there is reason to think
either (1) that a rational defendant would want to appeal (for
example, because there are nonfrivolous grounds for appeal),
or (2) that this particular defendant reasonably demonstrated

> to counsel that he was interested in appealing. In making this
> determination, courts must take into account all the
> information counsel knew or should have known.

As pertinent to the present action, the second situation is easily resolved because Keseleski does not allege that he expressed an interest in appealing. The linchpin to the present action is the first situation identified in *Flores-Ortega*, specifically, would a rational defendant want to appeal. A "highly relevant factor" for consideration is, as *Flores-Ortega*, 528 U.S. at 480, states, whether the defendant pleaded guilty and waived his appellate rights.

> Although not determinative, a highly relevant factor in this
> inquiry will be whether the conviction follows a trial or a guilty
> plea, both because a guilty plea reduces the scope of potentially
> appealable issues and because such a plea may indicate that
> the defendant seeks an end to judicial proceedings. Even in
> cases when the defendant pleads guilty, the court must consider
> such factors as whether the defendant received the sentence
> bargained for as part of the plea and whether the plea expressly
> reserved or waived some or all appeal rights.

The circumstances of Keseleski's plea are factually distinguishable from *Flores-Ortega*, which involved neither a plea agreement nor an appellate waiver and, as a consequence, trial counsel had a constitutionally imposed duty to ascertain the defendant's wishes because Flores-Ortega had expressed an interest in filing an appeal. Instead, the circumstances of Keseleski's plea are factually aligned with *Otero v. United States*, 499 F.3d 1267 (11th Cir. 2007). The similarities include (1) that Otero's plea agreement contained an appeal waiver nearly identical to Keseleski's[6]

---

[6] Both Otero's and Keseleski's prosecutions originated in the Tampa Division of the Middle District of Florida. Unlike *Otero's* appeal wavier, the appeal waiver in Keseleski's plea agreement includes no waiver of a collateral challenge to the conviction and sentence.

and (2) that Otero and his defense counsel discussed the appeal waiver several times before Otero's pleading guilty but no additional consultation on the topic occurred after the imposition of sentence.

*Otero*'s analysis begins by assuming that counsel's failure to consult with Otero after the imposition of sentence was a violation of *Flores-Ortega's* consultation requirement, but "conclude[s] that Otero's trial lawyer had no constitutional duty to consult Otero about an appeal and thus did not render constitutionally ineffective assistance by failing to do so." *Otero*, 499 F.3d at 1269. This conclusion was because "under the circumstances of this case, [there was] no constitutional duty to consult in the first place." *Otero*, 499 F.3d at 1269 n.1. The plea agreement and the appeal waiver weigh heavily in the government's favor, as *Otero*, 499 F.3d at 1271, explains:

> In answering the question of whether a rational defendant would want to appeal his sentence, it is relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal. See *Flores-Ortega, id.* at 480, 120 S. Ct. at 1036. All those factors weigh heavily in favor of the government in this case. The plea agreement signed by Otero contained a typical appeal-waiver provision, pursuant to which Otero "expressly waived the right to appeal his sentence, directly or collaterally, on any ground." This broad waiver contained four exceptions. Those exceptions allowed Otero to appeal (1) "an upward departure by the sentencing judge," (2) "a sentence above the statutory maximum," (3) "a sentence in violation of the law apart from sentencing guidelines," or (4) any sentence if the Government appealed. Otero does not argue that any of these exceptions apply in this case. Therefore, on account of the plea agreement's broad appeal waiver, any appeal taken by Otero would have been frivolous and would have been an appeal that no rational defendant would have taken.

Considering the similarity with *Otero*, Keseleski's claim fails "[b]ecause no rational defendant in [his] position would have sought to appeal in light of the broad appeal waiver, and because [he] did not communicate to his lawyer a desire to appeal, [his] lawyer was not under a constitutional obligation to consult [him] about an appeal." *Otero*, 499 F.3d at 1271. *See also Devine v. United States*, 520 F.3d 1286, 1288–89 (11th Cir. 2008) (affirming the district court's determination that "no rational defendant would want to appeal" because the sentence "was at the bottom of the guidelines" and the defendant's plea agreement included the standard appeal waiver); *Gaston v. United States*, 318 F. App'x 750 (11th Cir. 2008) (holding that counsel had no duty to consult where there were no non-frivolous grounds for appeal because defendant had received a sentence at the low end of the guidelines range and had signed an appeal waiver, defendant gave no indication that he wanted to appeal, and no rational defendant would have filed an appeal); *Cuero v. United States*, 269 F. App'x 893, 895 (11th Cir. 2008) ("[E]ven if counsel insufficiently consulted with Cuero, it did not amount to ineffective assistance of counsel" because "trial counsel did not have a constitutional duty to consult with Cuero about an appeal.").

Keseleski does not claim that he expressed an interest in appealing. No rational defendant in Keseleski's situation would want to appeal (1) having waived his right to appeal, (2) facing the possible loss of a three-level decrease for accepting responsibility, and (3) facing the possible loss of the favorable 24-month sentence the district court imposed for the drug charge, which is "more or less a 50 percent

sentence in deference to the defendant's positive prospects for rehabilitation" (Doc. 29 at 33–34), followed by the mandatory sixty months for the gun charge. Based on these facts and the analysis in *Otero*, Keseleski's defense counsel had no constitutional obligation after the sentencing to consult Keseleski about an appeal. As a consequence, Keseleski's ground one — that counsel rendered ineffective assistance by not appealing — lacks merit.

### B. The Gun Charge

Keseleski was a bail bondsman when he purchased the half-kilogram of cocaine from the undercover officer. Keseleski carried a firearm as part of his job as a bail bondsman. Keseleski arrived at the place of the drug purchase with a firearm and $13,000 cash, both of which he had placed together in the car's glove box. Upon returning to his car to retrieve the cash after having inspected the cocaine, Keseleski removed the cash from the glove box but left the gun inside the glove box. The firearm was the one he carried for his job. As a consequence, the firearm was not on his person when he purchased the cocaine inside the under-cover officer's car.

The fact that Keseleski was a bail bondsman and that the gun was his "constant companion" as part of his job was known by counsel when the plea agreement was negotiated. Nevertheless, in ground two Keseleski alleges that counsel rendered ineffective assistance by failing to investigate the fact that he legally possessed the firearm as part of his job, as compared to possessing the firearm in furtherance of the drug crime. In ground three Keseleski alleges that counsel was

ineffective for not challenging the gun charge but instead advising him to admit to the gun charge by signing the plea agreement. Lastly, in ground four Keseleski contends that he should not have been charged with possession of a firearm in furtherance of a drug trafficking crime because he legally possessed the firearm as part of his job. Each claim is precluded by Keseleski's guilty plea.[7]

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea waives a non-jurisdictional defect:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

This waiver of rights precludes most challenges to the conviction. A guilty plea waives a claim based on a pre-plea event, including a claim of ineffective assistance of counsel. *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). "[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). *See also United States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional

---

[7] When he pleaded guilty Keseleski admitted that he possessed the firearm in furtherance of a drug trafficking crime, that the facts in the plea agreement were accurate, and that because of the conviction he will lose his right to possess a firearm. (Audio recording of change of plea at 10:32:26, 10:32:44, and 10:08:30, respectively).

- 14 -

defects in the proceedings."). The entry of a guilty plea waives a claim (other than a jurisdictional challenge or a challenge to the voluntariness of the plea), including both a substantive claim and a purported failing of counsel that occurred before entry of the plea. By pleading guilty Keseleski waived the right to challenge the validity of the gun charge and the sufficiency of the evidence to prove the offense. *See United States v. Viscome*, 144 F.3d 1365,1370 (11th Cir. 1998) (holding that a guilty plea waives a challenge to the sufficiency of the government's evidence).

However, a guilty plea does not waive the right to challenge the validity of the plea. "A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson*, 962 F.2d at 997. Keseleski does not claim that the plea was involuntary and unknowing.[8] As a consequence, Keseleski's guilty plea precludes the claims in grounds two, three, and four.

Accordingly, the motion under Section 2255 to vacate the sentence (Doc. 1) is **DENIED**. The clerk must enter a judgment against Keseleski, close this case, and enter a copy of this order in the criminal action.

---

[8] When he pleaded guilty Keseleski represented that he was pleading guilty voluntarily and without a promise outside of the plea agreement. (Audio recording of change of plea at 10:05:39).

# DENIAL OF BOTH
# CERTIFICATE OF APPEALABILITY
# AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Keseleski is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Keseleski must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Keseleski is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Keseleski must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 28, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE